R. M. BARTON, Jr., Assignee, etc. v. JOHN GEILER.

BANKRUPTCY. *Assignee may sue in State Courts.* An assignee in bankruptcy may sue in the State courts to recover the assets of the bankrupt. The State courts thereby assume no jurisdiction under the bankrupt act, but simply exercise their ordinary jurisdiction in suits between parties.

### FROM HAMILTON.

Appeal from the Chancery Court at Chattanooga. W. M. BRADFORD, Ch.

R. M. BARTON for complainant.

N. BURT and LEWIS SHEPHERD for defendants.

DEADERICK, C. J., delivered the opinion of the court.

On the 29th August, 1876, the complainant, as assignee in bankruptcy of Jacob Kessler and Fred. Horman, filed his bill in the Chancery Court at Chattanooga, against the defendant, John Geiler.

The bill alleges that on the petition of creditors of said Kessler & Horman, partners, filed 17th March, 1876, they were regularly declared bankrupts, by the U. S. District Court at Knoxville, on the 8th day of April, 1876.

It is further alleged that on the 10th February, 1876, said firm made an assignment of their stock of goods to a trustee for the benefit of their creditors,

Barton *v.* Geiler.

and on the 18th January, 1876, Jacob Kessler made a fraudulent conveyance of an interest of one half in a valuable house and lot in Chattanooga to defendant Geiler; that their conveyance was made with the intent to defraud other creditors, and to defeat the provisions of the bankrupt act, by giving an unauthorized preference to said Geiler, who had reason to believe said debtor was insolvent and knew that a fraud upon said act was intended.

Defendant answered the bill and denied that he had reason to believe said Kessler was insolvent or knew that he intended any fraud by the conveyance, etc.

The Chancellor decreed that the conveyance was fraudulent, and that said Kessler had a fourth instead of a half interest in said house, and directed its sale as prayed for, but refused an account of rents, and from this decree both parties have appealed to this court.

Although the defendant took no objection to the jurisdiction of the Chancery Court by plea or otherwise, his solicitor suggests that question for consideration and determination of this court, and cites authorities upon which he relies, to show that the Federal Courts have exclusive jurisdiction to administer the bankrupt law, and to avoid sales or forfeitures under it, and to recover property fraudulently tranferred by the bankrupt. And such seems to have been the view taken by the Supreme Court of Wisconsin in the case of *Bromley* v. *Goodrich et al.,* decided in January, 1876.

The Supreme Court of Missouri, in the October

previous, had on the contrary held, that a State court has jurisdiction of an action brought by an assignee to collect a debt due the bankrupt, and he may select his forum for this purpose, and that this right of the assignee to use the State courts as agencies for the collection of the assets of the bankrupt, does not affect the jurisdiction of the Federal Courts, as to the disbursement of the assets when collected.

In the case of *Chaflin* v. *Houssman*, assignee, 3 Otto, 131, where the assignee brought suit in a State court to recover a sum collected on a judgment by default, by Chaflin, with intent to give him a preference and in fraud of the bankrupt law, the U. S. Supreme Court held, that the assignee might bring such a suit in the State court.

There does not seem to be any sound reason why the agency of the State courts should not be used, in the collection of the assets of the bankrupt, for the purpose of aiding the Federal Courts in the administration and distribution of the bankrupt's estate. They assume no jurisdiction under the bankrupt act in so doing, but simply exercise their ordinary jurisdiction in suits between parties.

We are of opinion, therefore, that an assignee in bankruptcy may sue in the State courts, to recover the assets of the bankrupt, and that such suit in no way affects or interferes with the jurisdiction of the Federal Courts, in case of bankruptcy.

The next question is, do the provisions of the bankrupt act make the conveyance from Kessler to Geiler void?

Barton *v.* Geiler.

To make the conveyance void, the following facts must concur:

1. The debtor making the transfer must be insolvent.

2. The conveyance must have been made with a view of giving a preference to the creditor.

3. In any event, the person receiving the conveyance must, at the time, have reasonable cause to believe the person making the conveyance to be insolvent, and

4. He must also know that such conveyance was in fraud of the provisions of the bankrupt act.

5. The conveyance must have been made within four, or (in this case of involuntary bankruptcy), two months before the filing of the petition, by or against the bankrupt.

It sufficiently appears from the record, that at the time of the conveyance to Geiler, Kessler was insolvent. But it does not appear that Kessler, at that time, was aware of the fact of his insolvency, otherwise than as the fact being so, one may be presumed to be aware of his own condition. At the time the conveyance was made, Jones, who was in the employ of the firm, says that he always understood they were well to do, and always promptly met their debts, and it was at his instance that the inventory was taken of their stock, which showed it was not sufficient to pay their debts, and he then advised they should make an assignment, which was immediately done. This was several weeks after the conveyance to Geiler. And Evans testifies that before the inventory was taken, Kessler insisted they had ample means to pay their

debts; and he and his partner had some disagreement, which made Horman desirous to sell his interest to Kessler. And Kessler testifies that he never knew he was unable to pay his debts until the evening before the assignment was made on taking an inventory of their assets, and had not then, nor before, nor after, any intention of taking the benefit of the bankrupt act, but made the assignment to pay his creditors as far as his assets would go, and then to pay the rest as he might be able. There is no testimony in the record to contradict these statements.

Geiler is an old German, speaking English very imperfectly, so that it was necessary in taking his deposition to employ an interpreter. Beside, he is afflicted with a disease of the spine, is very hard of hearing, and hardly competent to attend to his business. He denies having any reason to believe that Kessler was insolvent, or having any knowledge that Kessler's conveyance to him was in fraud of the bankrupt act. Kessler had for several years, five or six or more, lived in his family, and acted as his agent in transacting his business; had handled considerable sums of money, and no complaint seems to have been made of his want of fidelity. He, as both Geiler and himself state, had borrowed several sums of money of Geiler, who held his notes, one for $875, and one for $630, and the firm of Kessler & Horman owed him $560. This sum and about $200 due Chris. Horman, a brother of Fred., and former partner, were proved by them respectively, in the bankrupt case.

There is no evidence, aside from the fact of insol-

vency at the time of the conveyance to Geiler, of an intent to prefer. But at that time Kessler says he believed he was solvent, nor does it appear that others supposed that he was not.

Evans, who wrote the deed and did business for the firm, and Chris. Horman, a partner up to September, 1875, supposed them to be solvent; and Evans testifies that they had good credit and always paid their notes when due, up to the time of the assignment. When the conveyance was made to Geiler, Evans drew the deed, and proves that the two notes of Kessler were surrendered to him, and Geiler remarked that he would go and get the money to complete the payment, but Kessler remarked to him, wait awhile, we will go and have the deed recorded, etc.; that he saw no money paid. But Kessler and Geiler both swear it was paid on that day, 18th January, and Kessler said he paid part of it in a day or two afterwards to Chris. Horman on a note due him; and Chris. Horman proves that Kessler did pay him on the 19th or 20th of January, six or seven hundred dollars on a note he held on him. It is true Kessler lived in Geiler's family and his firm occupied Geiler's store house. But it is in evidence that the rent was regularly paid, and there is no evidence that Geiler had reasonable cause to believe Kessler was insolvent when he took the conveyance.

We think the evidence very clearly shows, that Geiler paid all of the $14,300 that the lots and improvements cost, except $2,325 that Kessler paid, and

that this sum was repaid him in his own notes **and** in cash by Geiler.

All the testimony was taken by complainant, **and** unless we reject the testimony of his own witnesses, we are unable to concur in the Chancellor's conclusion, that the sale and conveyance to Geiler was fraudulent in fact, and void under the bankrupt act.

The Chancellor's decree will be reversed and **the** bill dismissed.