EDWARDS *v.* HAWKS *et al.*

(*Knoxville*, September Term, 1948.)

(May Session, 1949.)

Opinion filed July 2, 1949.

18

CALDWELL & BROWN, of Bristol, for complainants.

J. L. STERN and ERNEST B. KING, of Bristol, for defendant.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The complainant Edwards as Trustee in Bankruptcy of the estate of Fannie Mattox filed his original bill in the Chancery Court to have homestead and dower assigned to the said Bankrupt. It is charged in the bill that he was duly appointed Trustee of the said Fannie Mattox when she filed her petition in bankruptcy in the U. S. District Court and that he files the bill at the direction of the said Court. It appears from the record that J. B. Mattox died intestate in 1934, and was survived by his widow Fannie Mattox and a daughter, Willie Joe. On March 12, 1934, letters of administration upon his estate were issued to Fannie Mattox and she qualified as Administratrix. The record however fails to show that she ever made a final settlement of her administration. This however is not important in the present controversy. The deceased J. B. Mattox died seized and possessed of certain lands in Sullivan County, the same being fully described in the original bill.

According to the averments in the original bill her daughter, Willie Joe, became the owner in fee of all the lands of J. B. Mattox as his sole heir, subject to homestead and dower of her mother, Fannie Mattox.

No homestead and dower has ever been assigned and set apart to her.

The bill not only prayed for the appointment of commissioners to set aside homestead and dower of the bankrupt but "that it be sold and the proceeds paid over to complainant to be administered by him as Trustee in Bankruptcy" etc.

The defendant Fannie Mattox filed a plea in bar to the effect that "she was duly discharged from the debt or demand set forth in complainant's bill." The plea was ruled to be insufficient as a defense and the defendant refused to make further answer to the bill. A *pro confesso* was thereupon taken against her.

The defendant Willie Joe Hawks, who had married Clifford Hawks, demurred to the bill upon the grounds:

(1) "That there was another suit pending for the same matter between the parties, i. e. in the U. S. Bankruptcy Court."

(2) "That the bill seeks to litigate only a part of the controversy."

(3) There is no equity in the bill; "that the bill fails to show any equitable jurisdiction in this court of the subject matter in controversy."

The Chancellor overruled the demurrer, denied an appeal by defendants and after due notice to them appointed commissioners to assign dower and homestead as prayed for in the bill.

A writ of *supersedeas* was applied for to one of the Justices of this Court which was denied.

A decree was later entered confirming the report of the commissioners, who had complied with the orders of court in assigning homestead and dower.

The defendants appealed from the Chancellor's decree and have assigned as error the following:

(1) "The Chancellor erred in overruling the demurrer to jurisdiction."

(2) "The Chancellor erred in assuming jurisdiction of a summary proceeding, i. e. The assignment of dower, upon the petition of a Trustee in Bankruptcy and rendering a decree therefor upon an erroneous judgment *pro confesso.*"

The opinion of the learned Chancellor is so clear, concise and unassailable that we quote it in full and adopt it as the opinion of this Court.

"In the Chancery Court at
Bristol, Tennessee
"Memo

■ ■ "This cause was argued on demurrer and submitted on briefs. Complainant is the Trustee in Bankruptcy of the first named defendant, having been appointed in a pending proceeding in the U. S. District Court for the Eastern District of Tennessee, Northeastern Division. He brings this proceeding at the direction of that Court to procure assignment of the unassigned dower right of the bankrupt defendant in realty aggregating 81.6 acres in the second Civil District of Sullivan County. The allegations of the bill are sufficient to establish the bankrupt's right to dower. The demurrer questions only the complainant's right to procure the assignment. It appears that this question was also fully litigated, and decided adversely to demurrant, in the Federal Court, but it is insisted that the decision there is erroneous and not binding on this Court. It is doubtless correct that this Court must determine its own jurisdiction and the right of a particular complainant to invoke it, but I have examined the opinion of the District Judge and agree with his conclusion that a Trustee in

24

bankruptcy may by proper proceeding procure the assignment of the bankrupt's unassigned dower to the end that it may be made available to creditors as a part of the bankrupt estate, there being no exemption under the state law. The Bankruptcy Act confers rights upon the Trustee in bankruptcy which may be exercised in this, as well as in the Federal Court. Under Section 110(A) of the Act (U. S. C. A. Title 11, Section 110), the Trustee in bankruptcy is vested with the bankrupt's title to 'property, including rights of action, which—he could *by any means have transferred* or which might have been levied upon and sold . . . or otherwise seized, impounded, or sequestered . . . (emphasis supplied) and also to powers which he might have exercised for his own benefit'.

█ "Unassigned dower is a chose in action which the bankrupt might have realized through exercise of her power and right to have it assigned. It also, though unassigned, might have been transferred to the heirs at law, or after assignment, as other realty to any purchaser. Certainly there were 'means' by which the bankrupt might have obtained its assignment and transfer. While not subject to levy it could have been reached on the bill in equity of a judgment creditor with *nulla bona* return. *North* v. *Puckett,* 164 Tenn. 100, 46 S. W. 2d 73 [81 A. L. R. 1107].

█ "Complainant's solicitors cite Section 70 (c) of the Bankruptcy Act (11 U. S. C. A. 110(c)) providing that as to property not within the possession of the Bankruptcy Court the trustee shall have the right of a judgment creditor holding an execution unsatisfied. This alone would appear to entitle the complainant to proceed under the authority of *North* v. *Puckett, supra.* Demur-

rant's insistence that the judgment creditor must also have a lien is not sound. It may be doubted whether a lien on a chose in action could be obtained in the manner suggested, recordation of a memorandum of judgment.

■ "Demurrant's solicitor further argues that there is only a single creditor in the bankruptcy proceeding, and that since the bill does not allege that such creditor was qualified to bring a bill such as this, the trustee may not proceed. The argument goes beyond the bill, and no authority is cited for limiting the rights of the trustee to those of the creditor or creditors filing claims. It would appear to be untenable.

■ "Further ground for demurrer is that the same relief might have been obtained in the Federal Court in the Bankruptcy proceeding. Whether or not this is true, it would be no bar to this proceeding. The trustee proceeds here, in a Court having jurisdiction of the subject matter, at the express direction of the Federal Court. No proceeding *for the same relief* is there pending.

■ ■ "Objection is also raised, in the brief, to the cost bond. If in fact the security is insufficient, the defendants have their remedy. It is not by demurrer, the bond being sufficient in form. The objection is apparently that the trustee did not require a cost deposit as instructed by the Federal Court. Demurrants could not know from the bill whether this is true, and if it is true that the trustee did not follow instructions in this regard, defendants would not be aggrieved.

■ "It is also urged that the bill prays assignment of dower *and sale thereof* following assignment, whereas the order authorizing the trustee to proceed here merely directs him to procure assignment, it being con-

templated that sale would be had in the Bankruptcy proceeding. This objection to lack of authority would appear sound, but the bill need not fail. This Court has jurisdiction to set apart dower at the behest of a widow or one who, as complainant here, is armed with her rights in that regard under the law. Because amended authority may be procured, the defendant may rely upon complainant's want of authority to proceed here to sale in their answer, and to this extent the demurrer will be overruled with leave to reply. Otherwise it appears to be without merit and must be overruled.

"Decree accordingly.

"JOE W. WORLEY, Chancellor."

Contention is made that the Chancellor committed error in assuming jurisdiction in a "summary proceeding" and that error was also committed in entering a *pro confesso* against Fannie Mattox as administratrix.

The question of the jurisdiction of the Chancery Court to assign dower was settled in the case of *North* v. *Puckett,* 164 Tenn. 100, 46 S. W. 2d 73, 81 A. L. R. 1107, as pointed out by the Chancellor and we can add nothing to what was said in that case. Moreover the reasoning of the Chancellor and the authorities cited seem to be conclusive of the question. There is no merit in the contention that the complainant's exclusive remedy was to compel a discovery as provided in Code Sections 6091, 6092 and 6093. The object of these code sections was to confer jurisdiction upon the Chancery Court to compel a discovery of *concealed* assets of the debtor. But they in no wise abridge the right of the court to set aside homestead and dower, which cannot be reached by execution at law. In the instant case there was no occasion for a bill to compel a discovery of homestead and

dower. The widow had not released it to the heir. It was not concealed in fraud or otherwise.

The case of *Bryan* v. *Zarecor et al.*, 112 Tenn. 503, 81 S. W. 1252, relied on by appellant, is not in point. In that case both the original and amended bills showed that the property was subject to execution at law and the creditor's legal remedy had not been exhausted. The creditor was contending that the Chancery Court had jurisdiction even though the property was subject to execution at law. This was denied upon the authority of the foregoing sections of the Code. The opinion simply holds that the equitable remedy is not available where there was an adequate remedy at law.

The Code Sections referred to in *Bryan* v. *Zarecor*, *supra*, provide a special equitable remedy where property is fraudulently concealed. They should be read in connection with Code Section 10391, which reads as follows:

"Substance of bill.—The bill should contain a clear and orderly statement of the facts on which the suit is founded, without prolixity or repetition, and conclude with a prayer for the required process and appropriate relief, without averring any formal combination or confederacy by the defendants or others, the insufficiency of the remedy at law, or other mere formal matter."

See also Gibson's Suits in Chancery, Section 1018:

"Suits in Aid of a Judgment Creditor *where no Fraud is Alleged.*—The Code gives the Chancery Courts exclusive jurisdiction to aid a creditor by judgment or decree, to subject the property of the defendant which cannot be reached by execution, to the satisfaction of the judgment or decree under the provisions of the Code. . . . (and) subject to their satisfaction *all property* of the defendant, that cannot be levied on under execution." (Italics ours.)

Citing *Stark* v. *Cheathem,* 2 Tenn. Ch. 300, wherein it was held: "It may be considered the settled law of this State that equitable realty may be reached in Chancery, upon the strength of the judgment, with as little formality as is required to reach the legal estate at law."

It is next argued by counsel for appellant that the *pro confesso* is invalid "because a judgment *pro confesso* against an administrator is not permitted." We concede, upon the authority of Gibson, Section 206, that this is true. But no administrator was sued in this case. In these circumstances the defendant Fannie Mattox could be heard for only one purpose following the entry of *pro confesso* against her, which was "on motion to have the *pro confesso,* and the proceedings based thereon set aside." Gibson's Suits, Section 206.

We are here reminded by counsel for the Trustee that the appellants continued to appear before the Chancellor and "assert themselves in one way or another after the *pro confesso* but never asked for it to be set aside, or made any exception to its having been taken."

Adverting to the question of the jurisdiction of the Chancery Court to assign dower, we find, in addition to the leading case of *North* v. *Puckett, supra, Barton* v. *Geiler,* 71 Tenn. 296, wherein it was said:

"There does not seem to be any sound reason why the agency of the State courts should not be used, in the collection of the assets of the bankrupt, for the purpose of aiding the Federal Courts in the administration and distribution of the bankrupt's estate. They assume no jurisdiction under the bankrupt act in so doing, but simply exercise their ordinary jurisdiction in suits between parties.

In a recent decision by the Court of Appeals, *Wyrick* v. *Hale,* Tenn. App., 209 S. W. 2d 50, 52, it was held: "A court of equity, in a suit for partition, has inherent power to do complete justice between the parties, *including the right to appoint Commissioners for the setting aside of homestead and dower.*" (Italics ours.)

The assignments of error are overruled and the decree of the Chancellor is affirmed, except that the costs which have accrued will be paid by the Trustee out of funds arising from the sale of the property in controversy.

All concur.