**Harriet B. MALKIN, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. CIV. A. 95–6522.**

United States District Court,
D. New Jersey.

April 7, 1998.

As Amended April 23, 1998.

---

Andrew P. Fradkin, Goldman, Jacobson, Kramer & Fradkin, Roseland, NJ, for Plaintiff.

Faith Hochberg, United States Attorney, Newark, NJ, Charles M. Flesch, Trial Attorney, Tax Division, Washington, DC, Susan Cassell, Assistant U.S. Attorney, Newark, NJ, for Defendant.

## OPINION

WOLIN, District Judge.

This case arises out of Harriet Malkin's ("plaintiff") challenge of the Internal Revenue Service's ("IRS") assessment of income taxes and penalties against her. The United States moves the Court to dismiss the case for lack of subject matter jurisdiction. The Court has decided this case without oral argument.

## BACKGROUND

Plaintiff is fifty years old and resides in Upper Saddle River, New Jersey with her husband, Barry Malkin, of twenty-eight years. Barry Malkin is a certified public accountant. They have a son named Leo who is twenty-one years old. Plaintiff graduated from college with a degree in English. At the time of her marriage, plaintiff was working for McGraw–Hill. She started as a secretary and eventually rose to editor of college textbooks, including accounting and business-related books.

Plaintiff believes that the man is the breadwinner and that he should provide for his family. She thought that Barry fit that mold, and that he "is someone who provides and tries to take care of his family." (Pl.

Dep. 134:11 to 135:3). Plaintiff's marriage, however, has been unhappy from the beginning because Barry did not tell her the truth regarding his financial situation and because he was a credit card junky who was heavily in debt. In fact, they received urgent letters from collection agents early in their marriage.

When they got married, they lived off his income, and she placed her pay checks in a savings account as security because she "was damned if he was going to have control over every last nickel" to pay his debts. Barry has and continues to make payments for the mortgage, maintenance of the house, life insurance, utilities, loans for plaintiff's car, and plaintiff's car insurance.[1]

Prior to her marriage, plaintiff relied on her parents to prepare her income tax returns. Once she got married, she relied on Barry to prepare and file income tax returns for her because he was her husband, a certified public accountant, and a "professional tax preparer." From 1970 to 1980, plaintiff provided Barry with information about her income and expenses so that he could prepare joint tax returns. Plaintiff consented to and signed those returns, but she never reviewed them. She also contends that she signed numerous financial documents over the years without reviewing them.

In 1981 or 1982, plaintiff left McGraw–Hill because of a medical disability. At the time, her salary was approximately $15,000 per year. She now receives $7,100 per year in disability income. Plaintiff suffers from endogenous depression and is still under the care of a psychiatrist. Her mental condition may also be the cause of her numerous physical ailments. In 1985, plaintiff stayed in an institution for two months on account of her medical illness. During the tax years in question, plaintiff took anti-depression medications, including Tranxene and Nardil.

Between 1980 and 1992, Barry continued to prepare joint tax returns for himself and plaintiff. During that time, plaintiff provided Barry with lists detailing her income and

1. Plaintiff asserts that in the early 1980's Barry was neglectful of his financial responsibilities, e.g., bills went unpaid and he became a "credit card junkie." She does not, however, cite to a page in her deposition to support her assertions.

expenses so that he could prepare the joint tax returns. From 1982 to 1992, Barry signed plaintiff's name to the joint tax returns because he was under a deadline and because plaintiff never asked to review them. According to plaintiff, she expressly told Barry not to sign her name to the joint tax returns. Plaintiff also was under the impression that she had no tax liability because she had limited income and excessive medical expenses.

During 1980 to 1992, Barry included plaintiff's income and expenses on the joint tax return, and he claimed her as an exemption. Plaintiff's income included her disability income from McGraw–Hill, income from a joint fund they maintained with Merrill Lynch, and plaintiff's free-lance editing business. Her expenses included medical costs, social security self-employment tax, interest paid by Barry on a car loan for plaintiff, interest for their mortgage, and charitable contributions.

Plaintiff estimates her assets to be worth $100,000. She obtained a large portion of her assets in 1989 when her mother passed away. Plaintiff's residence is worth approximately $400,000 to $430,000, and the remaining mortgage is $320,000.

Prior to 1993, plaintiff did not know that she had the option of filing a separate tax return under the category "married but filing separately." Plaintiff states that Barry never told her of that option, and that she learned about it on her own. In 1994, plaintiff began to file her own tax returns under married but filing separately.

Plaintiff first became aware that she and her husband had problems with the IRS in or around 1986. On January 14, 1993, plaintiff and Barry signed a stipulated decision in *Barry and Harriet Malkin v. Commissioner* (No. 33456–86). Subsequently, the U.S. Tax Court adopted the stipulated decision in which plaintiff and Barry admitted to having income tax deficiencies for tax years 1980 and 1981. She signed a similar stipulated decision for tax year 1982 (*Barry and Harriet Malkin v. Commissioner* (No. 9175–92)). Plaintiff asserts that Barry signed her name to pleadings in those cases without her authorization, knowledge, or consent.

In accordance with the first decision, the United States assessed $5,127.90 in income tax plus $15,985.01 in interest against plaintiff and Barry for tax year 1980. They did not pay that liability in full until January 1996. The United States also assessed $4,977.16 in income tax plus $13,332 in interest against them for tax year 1981. That liability was not paid in full until November 1996. As for tax year 1982, the United States assessed plaintiff and Barry $8,869.96 in income tax plus $18,405.90 in interest. That liability has not been fully paid, and an assessed balance remains of $21,040.48.

The United States has also made income, interest, and penalty assessments against plaintiff and Barry for tax years 1983 and 1986. Plaintiff and Barry have not fully paid those liabilities, and an assessed balance of $56,677.08 remains. Finally, the United States made interest and penalty assessments against plaintiff and Barry for tax years 1987 through 1992. Those liabilities have not been fully paid, and a balance of $76,044.11 remains.

On March 22, 1995, plaintiff filed Form 843, Claim for Refund and Request for Abatement, and Form 1040X, amended return, with the IRS requesting abatement or refund for tax years 1980, 1981, 1982, 1983, 1986, 1987, 1988, 1989, 1990, 1991, and 1992. On April 22, 1995, the IRS informed plaintiff that she did not have a deficiency for 1992. Despite that ruling, the IRS has persisted in serving levies to satisfy the unpaid balance for 1992. The IRS denied Barry Malkin's request for abatement for tax years 1988, 1990, and 1991. Plaintiff contends that the IRS did not act on her requests for abatement for those years because of Barry's application. The IRS has not acted on the remainder of plaintiff's requests.

On December 26, 1995, plaintiff filed a four-Count Complaint against the United States, and made an application for a temporary restraining order and preliminary injunction. In Count One, plaintiff requests a determination that the income tax assessments and the IRS's collection of those taxes for 1980 to 1983 and 1986 to 1992 should be declared the separate returns of her hus-

band, not their joint returns, because she did not sign, prepare, authorize, or prepare them. Moreover, she asks the Court to determine that she has no liability for the outstanding balances. Count Two asks the Court to abate the civil penalties assessed against her for failing to file income tax returns on time for the years in question because she was ill and because her husband signed her name to avoid exacerbating her condition. In Count Three, plaintiff contends that she should not have to pay the taxes because she was an innocent spouse. Count Four seeks an injunction against the United States from collecting further money from plaintiff to satisfy the assessed taxes. Plaintiff also asks the Court to direct the IRS to release all federal tax levies and liens, to refund any money collected directly or indirectly from plaintiff, and to notify third parties that plaintiff is not subject to backup withholding.

The Court denied plaintiff's application for a temporary restraining order, and plaintiff later withdrew its request for a preliminary injunction because the two parties had entered into a "stand-still" agreement regarding certain investment securities.

Plaintiff contends that if the injunction is not issued, she will have no financial security; i.e, she will have no money to pay "predictable large expenses." According to her, those expenses include doctor bills, college tuition, and money to run the house. However, she admitted that she would not lose the ability to rent a condominium in Vermont, take long weekends, or go to sporting events.

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the United States moves to dismiss the case for a lack of subject matter jurisdiction. The United States argues that the Tax Exception to the Declaratory Judgment Act, 26 U.S.C. § 2201, the Anti–Injunction Act, 26 U.S.C. § 7421(a), and the doctrine of sovereign immunity bar plaintiff's claim.

## DISCUSSION

### I. Standard for Dismissing for Lack of Subject Matter Jurisdiction

A defendant may attack a district court's subject matter jurisdiction in one of two ways. He may base his motion on the allegations in the complaint, or he may make the court's subject matter jurisdiction an issue of fact. *See Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir.1977). When the defendant makes the motion in fact, the district court may weigh the evidence because "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Id.* In other words, the district court's consideration of evidence does not convert the motion into one for summary judgment. *See Biase v. Kaplan,* 852 F.Supp. 268, 277 (D.N.J.1994). In this case, the United States makes a factual challenge to the Court's subject matter jurisdiction.

### II. Sovereign Immunity

It is axiomatic that the doctrine of sovereign immunity bars suits against the United States unless it has expressly consented to be sued. *See, e.g., United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976); *United States v. Nordic Village,* 503 U.S. 30, 33, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992). "[T]he terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 85 L.Ed. 1058 (1941). Moreover, courts should not enlarge and should strictly construe the United States' waiver of sovereign immunity. *See, e.g., Nordic Village,* 503 U.S. at 34, 112 S.Ct. 1011. Finally, the party bringing the suit must show that the United States has unequivocally waived its sovereign immunity. *See West v. Federal Aviation Admin.,* 830 F.2d 1044, 1046 (9th Cir.1987) *cert. denied,* 485 U.S. 1007, 108 S.Ct. 1470, 99 L.Ed.2d 699 (1988). Congress abrogated the United States' sovereign immunity in tax cases when it enacted 28 U.S.C. § 1346(a)(1), which provides:

The district courts shall have original jurisdiction ... of [a]ny civil action against

the United States for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected, or any penalty claimed to have been collected without authority or any sum alleged to have been excessive or in any manner wrongfully collected under the internal-revenue laws.

A taxpayer may not file a suit in district court, however, until he ·has paid the entire assessment, including interest and penalties, and timely filed a claim for a refund with the IRS. *See* 26 U.S.C. § 7422(a); *United States v. Dalm,* 494 U.S. 596, 601–02, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990); *Flora v. United States,* 357 U.S. 63, 68, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958), *aff'd on reh'g,* 362 U.S. 145, 80 S.Ct. 630, 4 L.Ed.2d 623 (1960).

▇▇ The United States argues that plaintiff has not satisfied the jurisdictional requirements because she has not paid her full tax liability (tax, penalty, and interest) or timely filed an administrative claim for a refund with the IRS. Thus, the United States asserts that the Court should dismiss plaintiff's complaint.

Plaintiff's requests for abatement or refund in March 1995 do not satisfy the jurisdictional requirements. First, at the time she filed those requests, she had not satisfied any of her tax liabilities. Outstanding balances still exist for 1982, 1983, 1986, 1987, 1988, 1989, 1990, and 1991.[2] Thus, the Court holds that it does· not have subject matter jurisdiction over this case because plaintiff has failed to meet the first jurisdictional requirement of paying one's taxes prior to filing an administrative hearing. Second, plaintiff's claims for abatement or refund in March 1995 for tax years 1980 and 1981 also fail to comply with the requirements because she paid her liabilities for those years after she filed her claims for a refund. Thus, this Court cannot exercise' jurisdiction because her administrative claims were not "duly filed." *See Urwyler v. United States,* 1996 WL 87001, \*1 (E.D.Cal.1996), *aff'd,* 125 F.3d 860, 1997 WL 632595 (9th Cir.1997); *Nelson v. United States,* 727 F.Supp. 1357, 1358 (D.Nev.1989) ("Until the entire tax was paid,

the claim could not be duly filed, and it is undisputed that no claim was filed after complete ·payment").

### III. The Anti–Injunction Act

Generally, district courts need not discuss issues after it has determined that it does not have subject matter jurisdiction over a case. However, in this case, plaintiff argues that she cannot satisfy the jurisdictional requirements because she does not have the money to pay the tax liabilities. She concludes that she is denied a remedy at law for as long as she cannot pay the assessment. The Court will, therefore, depart from general practice and will evaluate plaintiff's claim.

The Anti–Injunction Act, 26 U.S.C. § 7421(a), provides: "Except as provided ... no suit for the purpose of restraining the assessment or collection of any tax shall be maintained in any court by any person, whether or not such person is the person against whom such tax was assessed." The Anti–Injunction Act protects the United States' need to collect taxes expeditiously, and limits disputes to suits for refunds. *See, e.g., Bob Jones Univ. v. Simon,* 416 U.S. 725, 736, 94 S.Ct. 2038, 40 L.Ed.2d 496 (1974). The Act provides both statutory exceptions and a judicially created exception. The parties agree that the issue is whether plaintiff meets the judicially created exception.

▇▇ A taxpayer may avoid § 7421(a) only if two conditions are met: (1) it is clearly shown that under no circumstances could the United States ultimately prevail, and (2) equity jurisdiction exists. *See Enochs v. Williams Packing & Navigation Co.,* 370 U.S. 1, 7, 82 S.Ct. 1125, 8 L.Ed.2d 292 (1962). The United States' chance of prevailing must be considered under the most liberal view of the law and facts. *Id.* As the Third Circuit has stated: "Because the Service is entitled to judgment on a Williams Packing claim if it demonstrates that it has a position which it can litigate in good faith, it is normally not necessary that such claims be tried." *Flynn v. United States,* 786 F.2d ˙586, 592 (3d Cir. 1986). If the United States has a chance to win, the district court must dismiss the case

---

**2.** The United States asserts that an outstanding balance still exists for 1992. The Court, howev-

er, finds that the IRS's letter of April 22, 1995, absolves plaintiff of that liability.

because it does not have jurisdiction. *Id.* The taxpayer has the burden of proving both elements. *See Flynn, supra,* 786 F.2d at 591.

## A. Tax Years 1980, 1981, and 1982

█ The principles of *res judicata* apply to Tax Court decisions, including stipulated decisions. *See United States v. Bottenfield,* 442 F.2d 1007, 1008 (3d Cir.1971); *United States v. Shanbaum,* 10 F.3d 305, 313 (5th Cir.1994).

█ Plaintiff concedes that she signed the stipulated decisions for tax years 1980, 1981, and 1982. Moreover, plaintiff did not appeal those decisions. She contends, however, that she did not sign the petitions to the Tax Court, and that Barry obtained her signature with coercion: "[h]er husband thrust the documents at her with a demand that they be signed." Thus, she concludes that she did not consent to the decisions.

█ To show duress in tax cases, the taxpayer must show that she was unable to resist the coercer's demands, and that she would not have signed the return except for the constraint applied to her will. *See Stanley v. Commissioner of Internal Revenue,* 45 T.C. 555, 562, 1966 WL 1239 (1966). "In other words, petitioner must show not only that she had no choice in executing her signature but also that she was 'reluctant' to do so." *Brown v. Commissioner of Internal Revenue,* 51 T.C. 116, 119, 1968 WL 1502 (1968).

Plaintiff's deposition transcript does not support her attempt to show that Barry coerced her into signing the decisions. Her testimony shows only that Barry frequently presented her with documents to sign as he was leaving the house. Plaintiff has not shown that Barry placed undue burden on her to sign the decisions, or that she would not have signed the decisions except for the undue burden. Thus, plaintiff has failed to show that the United States would not prevail on the tax years 1980, 1981, and 1982 because *res judicata* bars her claims.

## B. Tax Years 1983 and 1986–1991

█ Section 6013 of the Internal Revenue Code authorizes a married couple to file a joint income tax return. When such a return is filed, both spouses are jointly and severally liable for the taxes due for that year. Both spouses need not sign the return so long as the couple intended to file jointly. *See, e.g., Estate of Campbell v. Commissioner of Internal Revenue,* 56 T.C. 1, 1971 WL 2558 (1971). "The intent to file jointly may be inferred from the acquiescence of the nonsigning spouse." *Crew v. Commissioner of Internal Revenue,* 44 T.C.M. 1145, 1146(CCH) (1982). Thus, "where a husband files a joint return without objection of the wife, who fails to file a separate return, it will be presumed the joint return was filed with the tacit consent of the wife." *Heim v. Commissioner of Internal Revenue,* 251 F.2d 44, 46 (8th Cir.1958) (quotation omitted). The Tax Court has found the requisite intent where the spouse refused to sign a return. *See Federbush v. Commissioner of Internal Revenue,* 34 T.C. 740, 757–58, 1960 WL 1373 (1960) (finding that wife's refusal to sign tax return did not evince intent to file separate return because her refusal was related to marital problems).

The Court notes that plaintiff's deposition transcript does not provide strong support for her claim that she told Barry not to sign her name to the tax returns. For example, plaintiff was unable to remember when she made the statement or when she learned that he was signing her name. Moreover, plaintiff has not provided the Court with any corroboration to her claim.

Four factors must be considered when assessing whether the intent to file a joint return exists: (1) whether the couple has a history of filing joint returns; (2) whether the wife relied on the husband to handle financial matters; (3) whether the wife's income was reported on the joint return; (4) whether the wife filed a separate return. *See, e.g., Campbell, supra,* 56 T.C. at 1, 1971 WL 2558.

### 1. History

From 1970 until 1993, plaintiff and Barry signed joint returns. Plaintiff stopped sign-

ing the returns in 1982, but she never filed a separate return, and she continued to provide him with lists of her income and expenses. Such a history could be interpreted as at least tacit intent to file a joint return. *See id.* 56 T.C. at 1.

### 2. Reliance

The parties do not dispute that Barry paid the mortgage, the car loan, car and life insurance, and utilities. Plaintiff claims that she paid the expenses related to running the house and credit card bills, including Barry's credit cards. Plaintiff also abdicated the preparation of the tax returns to Barry. Courts have found that a wife's reliance on her husband for financial matters evinces an intent to file a joint return. *See, e.g., Frank v. Commissioner of Internal Revenue,* 43 T.C.M. (CCH) 1149, 1156 (1982). The Court finds that plaintiff basically relied on Barry for financial matters.

### 3. Plaintiff's Income

All of the returns for the tax years in question included plaintiff's income, expenses, and charitable contributions. Additionally, Barry claimed plaintiff as an exemption. Once again, this factor indicates that plaintiff intended to file a joint return. *See Evans v. Commissioner of Internal Revenue,* 45 T.C.M. 249, 254–55 (1982).

### 4. Plaintiff Never Filed a Separate Return

Plaintiff first filed a separate return in 1994. Thus, for the first twenty-two years of her marriage she filed a joint tax return. Courts view a married taxpayer's failure to request to file a separate tax return as a decision to file jointly. *See, e.g., Estate of Miriam Krock v. Commissioner of Internal Revenue,* 46 T.C.M. 1330, 1333 n. 5 (1983).

Plaintiff's claim that she did not think she had to file a return after she stopped working for McGraw–Hill is unpersuasive because she continued to provide Barry with her financial information.

The Court concludes that the evidence shows that the United States would probably prevail in this case. Thus, plaintiff has not satisfied the first requirement of the judicially created exception to the Anti–Injunction Act. The Court will not assess whether it has equity jurisdiction because plaintiff's failure to show that the United States cannot prevail renders that issue moot.

### CONCLUSION

For the reasons stated *supra*, the Court will grant the United States' motion to dismiss for lack of subject matter jurisdiction. The Court, however, notes that plaintiff should have the opportunity to comply with the jurisdictional requirements, i.e., pay the taxes and file a claim for a refund with the IRS. Thus, the Court will dismiss the case without prejudice. The Court adds that plaintiff should review the statute of limitations to determine whether her claims are barred.