IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 6, 1999

## WOODROW WILSON v. SENTENCE INFORMATION SERVICES, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 98-185-I     Irvin H. Kilcrease, Jr., Chancellor**

---

**No. M1998-00939-COA-R3-CV - Filed April 26, 2001**

---

This otherwise routine dispute over sentence reduction credits raises a seldom-considered point of procedure regarding the proper method for deciding contested facts at the preliminary motion stage. A prisoner filed suit in the Chancery Court for Davidson County against the Tennessee Department of Correction and other state and city officials asserting that he had not been awarded sentence reduction credits allegedly earned while incarcerated in the Davidson County Criminal Justice Center. After the Department filed a Tenn. R. Civ. P. 12.02(1) motion to dismiss on the ground that the prisoner had not exhausted his administrative remedies, the prisoner asserted that he had exhausted all of the remedies available to him from the Department. After considering the arguments and evidentiary materials submitted by both parties, the trial court concluded that the prisoner had not exhausted his administrative remedies and dismissed the suit. On this appeal, the prisoner asserts that the trial court erred when it concluded that he had not exhausted his administrative remedies. We have determined that the evidence regarding the prisoner's exhaustion of his administrative remedies does not preponderate against the trial court's conclusion. Accordingly, we affirm the dismissal of the suit.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

WILLIAM C. KOCH, JR., J., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, JJ., joined.

Woodrow Wilson, Clifton, Tennessee, Pro Se.

Paul G. Summers, Attorney General and Reporter, and Patricia C. Kussmann, Assistant Attorney General, for the appellees, Sentence Information Services, Sentence Management Services, and Tennessee Department of Correction.

### OPINION

In August 1989, Woodrow Wilson entered a "best interest" guilty plea to two counts of aggravated sexual battery in order to avoid prosecution for eight counts of aggravated rape. The Criminal Court for Davidson County sentenced him to two concurrent twenty-year sentences in the

custody of the Tennessee Department of Correction ("Department").[1] Mr. Wilson was initially incarcerated in the Davidson County Criminal Justice Center because of overcrowding problems in the Department's facilities. He was later incarcerated at the South Central Correctional Center in Clifton, Tennessee.

Mr. Wilson participated in a voluntary work program while incarcerated in the Davidson County Criminal Justice Center. At some point in the mid-1990s, Mr. Wilson became convinced that he was entitled to sentence reduction credits for participating in the Davidson County work program and that the Department had not properly awarded him these credits. On January 21, 1998, Mr. Wilson filed a pro se "Motion to Restore Sentence Credits" in the Chancery Court for Davidson County naming the Department and others as defendants. The Department responded by moving to dismiss Mr. Wilson's complaint under Tenn. R. Civ. P. 12.02(1). The Department asserted that the trial court lacked subject matter jurisdiction over Mr. Wilson's complaint because he had not exhausted his remedies by first requesting a declaratory order from the Department as required by Tenn. Code Ann. § 4-5-225(b) (1998). Mr. Wilson responded by asserting that he had requested a declaratory order but that the Department never responded to his requests. He also asserted that the Department had his requests on file.

Thereafter, the Department filed an affidavit by Wilmer G. Lutche, the employee responsible for maintaining the records involving requests for declaratory orders, stating categorically that Mr. Wilson's request for a declaratory order "was not received by this office." Mr. Lutche's affidavit prompted Mr. Wilson to file his own affidavit, as well as an affidavit by his inmate counselor regarding his communications with the Department. Mr. Wilson insisted that he had filed declaratory order requests on September 6, 1994, and October 21, 1994, and provided with his affidavit what purports to be a copy of a completed petition for declaratory order form signed and dated September 6, 1994.

The trial court considered the matter solely on the written record and granted the Department's motion to dismiss.[2] The court found that it lacked subject matter jurisdiction because Mr. Wilson had not first sought a declaratory order from the Department. Mr. Wilson has appealed. To decide this case we must now consider a well-settled tenet of administrative law and a seldom-considered point of procedure – the exhaustion of remedies doctrine and the proper method for deciding contested facts at the preliminary motion stage.

---

[1] Mr. Wilson challenged the guilty plea proceedings several years later, but the Tennessee Court of Criminal Appeals declined to set aside his convictions. *Wilson v. State*, 899 S.W.2d 648 (Tenn. Crim. App. 1994).

[2] The Davidson County Sheriff and the Superintendent of the Davidson County Criminal Justice Center also filed a motion to dismiss Mr. Wilson's complaint based on grounds other than the failure to exhaust administrative remedies. The record contains no indication that the trial court ever considered or acted upon this motion. This oversight is largely academic in light of our decision to affirm the dismissal of Mr. Wilson's complaint for failure to exhaust administrative remedies. As a practical matter, Mr. Wilson may obtain the relief he seeks only from the Department.

# I.
## EXHAUSTION OF ADMINISTRATIVE REMEDIES

We live in a day and age where administrative bodies have become a veritable fourth branch of the government charged with the responsibility for administering a wide variety of statutory schemes. *Chevron, U.S.A., Inc. v. Natural Ress. Def. Council, Inc.*, 467 U.S. 837, 866, 104 S. Ct. 2778, 2793 (1984); *Federal Trade Comm'n v. Ruberoid Co.*, 343 U.S. 470, 487, 72 S. Ct. 800, 810 (1952) (Jackson, J., dissenting). Government, as we know it today, cannot function without the work of these administrative agencies.[3] Inevitably problems and complaints arise under these administrative regimes. When disagreements arise, administrative agencies should have the power and responsibility in the first instance – and sometimes in the final instance – to address them.

The exhaustion of administrative remedies doctrine reflects the courts' deference to administrative expertise. The doctrine provides that parties whose acts and interests are overseen by an administrative agency ordinarily may not obtain judicial relief for a supposed or threatened injury until all prescribed administrative remedies have been pursued to their conclusion. *Bracey v. Woods*, 571 S.W.2d 828, 829 (Tenn. 1978); 2 Charles H. Koch, Jr., *Administrative Law and Practice* § 13.21 (2nd ed. 1997). The exhaustion doctrine serves to prevent premature interference with agency processes. It also enables an administrative agency to (1) function efficiently and have an opportunity to correct its own errors; (2) afford the parties and the courts the benefit of its experience and expertise without the threat of litigious interruption; and, where the agency's decision is not a matter's final determination, (3) compile a record which is adequate for judicial review. *McKart v. United States*, 395 U.S. 185, 193-94, 89 S. Ct. 1657, 1662-63 (1969); *Thomas v. State Bd. of Equalization*, 940 S.W.2d 563, 566 (Tenn. 1997).

The doctrine's salutary purposes notwithstanding, exhaustion of administrative remedies is mandatory only when required by statute. Otherwise, requiring exhaustion is a matter within judicial discretion. *Thomas v. State Bd. of Equalization*, 940 S.W.2d at 566; *Coe v. City of Sevierville*, 21 S.W.3d 237, 241-42 (Tenn. Ct. App. 2000).

The exhaustion of administrative remedies principle is germane to this dispute between Mr. Wilson and the Department. The Department is an administrative arm of the State charged by statute with the responsibility for incarcerating those who have been convicted of crimes. Tenn. Code Ann. §§ 4-3-601, -606, 4-6-102 (1998); Tenn. Code Ann. § 41-1-102(a) (1997). One of the Department's duties is to maintain the records of prisoners' sentences. Tenn. Code Ann. § 4-6-140 (1998); Tenn. Code Ann. §§ 41-21-104, -107(a)(3) (1997). Prisoners who dispute the correctness of the manner in which the Department has calculated their sentence must take that matter up originally with the Department by requesting a declaratory order. *See*, *e.g.*, *Greene v. Tennessee Dep't of Corr.*, No. 01A01-9608-CH-00370, 1998 WL 382204, at *1 (Tenn. Ct. App. July 10, 1998) *perm. app. denied* (Tenn. Oct 19, 1998). As we have said previously, requiring prisoners to first take up the issue with the Department gives the Department, as the responsible administrative agency, an opportunity to

---

[3] The term "agencies" encompasses the boards, commissions, and departments of state government. Tenn. Code Ann. § 4-5-102(2) (1998).

resolve the issue. *Seagroves v. Tennessee Dep't of Corr.*, No. 01A01-9508-CH-00334, 1997 WL 210857, at *2 (Tenn. Ct. App. Apr. 30, 1997) (No Tenn. R. App. P. 11 application filed).

Until a prisoner has sought a declaratory order from the Department, the prisoner has not exhausted his or her administrative remedies. Tenn. Code Ann. § 4-5-225(b) expressly prohibits courts from rendering declaratory judgments concerning the validity or applicability of a statute, rule or order unless the complainant has petitioned the agency for a declaratory order and the agency has refused to issue one. A prisoner's failure to satisfy the statute's precondition prevents a court from exercising subject matter jurisdiction over any attempted lawsuit for declaratory relief. *Watson v. Tennessee Dep't of Corr.*, 970 S.W.2d 494, 497 (Tenn. Ct. App. 1998).

## II.
### HOW MAY TRIAL COURTS DETERMINE DISPUTED FACTS UNDERLYING A PRELIMINARY MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION?

The parties in this case presented the trial court with diametrically conflicting evidence regarding Mr. Wilson's exhaustion of his administrative remedies. The trial court weighed the evidence and found in favor of the Department. Mr. Wilson now argues, in his own words, that he "should have been given the benefit of the doubt on a motion to dismiss." To decide whether he is right, we must examine how a court properly goes about deciding disputes of fact when a party makes a preliminary challenge to a trial court's subject matter jurisdiction under Tenn. R. Civ. P. 12.02(1).

### A.

A threshold question in all cases is whether the court has jurisdiction over the lawsuit's subject matter. Because courts cannot act where jurisdiction is lacking, a trial court has an inescapable duty to determine whether the dispute is within its subject matter jurisdiction. *Edwards v. Hawks*, 189 Tenn. 17, 23, 222 S.W.2d 28, 31 (1949); *State v. Seagraves*, 837 S.W.2d 615, 617 (Tenn. Crim. App. 1992). When a court lacks subject matter jurisdiction over the case, it must dismiss the case without reaching the merits of the complaint. *Scales v. Winston*, 760 S.W.2d 952, 953-54 (Tenn. Ct. App. 1988).

Motions to dismiss under Tenn. R. Civ. P. 12.02(1) differ significantly from Tenn. R. Civ. P. 12.02(6) motions to dismiss for failure to state a claim upon which relief can be granted. While a motion to dismiss for failure to state a claim requires the court to reach the complaint's merits, the other preliminary motions enumerated in Rule 12 deal with procedural defects apart from the underlying merits of the complaint. *Mortensen v. First Fed. Sav. and Loan Ass'n.*, 549 F.2d 884, 891 (3rd Cir. 1977).[4] Because a motion to dismiss for failure to state a claim adjudicates both the

---

[4] Tenn. R. Civ. P. 12 is substantially identical to Fed. R. Civ. P. 12, making federal court precedents persuasive authority in construing our rule. *Byrd v. Hall*, 847 S.W.2d 208, 211 n. 2 (Tenn. 1993); *Bayberry Assocs. v. Jones*, 783 S.W.2d 553, 557 (Tenn. 1990); *Pacific Eastern Corp. v. Gulf Life Holding Co.*, 902 S.W.2d 946, 952 n.7 (Tenn. Ct. App. 1995).

legal and factual merits of a plaintiff's suit, courts considering these motions afford plaintiffs the safeguard of assuming as true all the plaintiff's factual allegations and drawing all reasonable inferences in the plaintiff's favor. *Doe v. Sundquist*, 2 S.W.3d 919, 922 (Tenn. 1999); *Harvey v. Ford Motor Credit Co.*, 8 S.W.3d 273, 275 (Tenn. Ct. App. 1999). If either or both parties submit evidentiary materials outside the pleadings either in support of or in opposition to a Tenn. R. Civ. P. 12.02(6) motion and if the trial court decides to consider these materials, the trial court must convert the motion to dismiss to a motion for summary judgment, *Pacific Eastern Corp. v. Gulf Life Holding Co.*, 902 S.W.2d at 952, and the court must notify the parties that it has made the conversion. *Teaster v. Tennessee Dep't of Corr.*, No. 01A01-9608-CH-00358, 1998 WL 195963, at *3-4 (Tenn. Ct. App. Apr. 24, 1998) (No Tenn. R. App. P. 11 application filed). Once a motion to dismiss is converted to a motion for summary judgment, the trial court must deny the motion if there exists any dispute about the material facts of the case. *Byrd v. Hall*, 847 S.W.2d at 211; *Pate v. Service Merchandise Co.*, 959 S.W.2d 569, 573 (Tenn. Ct. App. 1996).

However, as the Tennessee Supreme Court has recently pointed out, motions to dismiss merely on jurisdictional grounds are not converted to summary judgment motions when material factual disputes arise. *Chenault v. Walker*, 36 S.W.3d 45, 55 (Tenn. 2001). Courts faced with a motion to dismiss for lack of jurisdiction must make some kind of factual resolution allowing the court either to grant or to deny the motion. In the court's words, courts confronted with such motions must "determine whether the evidence in favor of finding jurisdiction is sufficient to allow the case to proceed." *Chenault v. Walker*, 36 S.W.3d at 56.[5]

In considering the sufficiency of the evidence at the motion to dismiss stage, the trial court must keep in mind that the plaintiff bears the burden of proving facts establishing that the court has jurisdiction. When a defendant has filed affidavits or other competent evidentiary materials

_____

[5]*Chenault v. Walker* involved a "factual," as opposed to a "facial," challenge to jurisdiction. These two types of challenges are different. 2A James W. Moore, et al., *Moore's Federal Practice and Procedure* ¶ 12.07[2.-1], at 12-50 through 12-55 (2d ed. 1995). A "facial" challenge makes war on the complaint itself. It asserts that the complaint, considered from top to bottom, fails to allege facts that show that the court has power to hear the case. *See*, *e.g.*, *Crawford v. United States Dep't of Justice*, 123 F. Supp. 2d 1012, 1013 (S.D. Miss. 2000) (making a facial challenge to jurisdiction). In deciding a facial challenge, the court considers the impugned pleading and nothing else. *Laird v. Ramirez*, 884 F. Supp. 1265, 1272 (N.D. Iowa 1995); *Ensign-Bickford Co. v. ICI Explosives USA, Inc.*, 817 F. Supp. 1018, 1023 (D. Conn. 1993). If a complaint merely attacked on its face competently alleges any facts, which if true, would establish grounds for subject matter jurisdiction, the court must uncritically accept those facts, end its inquiry, and deny the dismissal motion. *Great Lakes Educ. Consultants v. Federal Emergency Mgmt. Agency*, 582 F. Supp. 193, 194 (W.D. Mich. 1984). The method the court uses to evaluate a facial attack is thus similar to the familiar method of deciding motions to dismiss for failure to state a claim. *Jetform Corp. v. Unisys Corp.*, 11 F. Supp. 2d 788, 789 (E.D. Va. 1998); *Avellino v. Herron*, 991 F. Supp. 722, 725 (E.D. Pa. 1997).

A "factual" challenge, on the other hand, denies that the court actually has subject matter jurisdiction as a matter of fact, even though the complaint may allege facts tending to show jurisdiction. It controverts the complaint's factual jurisdictional allegations, *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed. Cir. 1993), and puts at issue the sufficiency of evidence to support alleged facts that, if true, would bring the case within a court's subject matter jurisdiction. *Ensign-Bickford Co. v. ICI Explosives USA, Inc.*, 817 F. Supp. at 1023. "Factual" challenges to jurisdiction create "genuine issues as to material fact," but courts must resolve those factual issues, at least preliminarily. *Edick v. Poznanski*, 6 F. Supp. 2d 666, 668 (W.D. Mich. 1998); *Malkin v. United States*, 3 F. Supp. 2d 493, 497 (D.N.J. 1998).

challenging the case's underlying jurisdictional facts, the plaintiff may not rely on the complaint but must make a prima facie showing of facts that establish jurisdiction. To do so, the plaintiff may submit affidavits or other helpful evidence. Tenn. R. Civ. P. 43.02; *Chenault v. Walker*, 36 S.W.3d at 56. When evaluating the case at that stage, the trial court "will take as true the allegations of the nonmoving party and resolve all factual disputes in its favor . . . [without crediting] conclusory allegations or draw[ing] farfetched inferences." *Chenault v. Walker*, 36 S.W.3d at 56. In doing so, however, the court does "not make any finding as to whether [the plaintiff's] version of events is, in fact, correct. That will be for a jury to decide if the case goes to trial." *Chenault v. Walker*, 36 S.W.3d at 56.

While *Chenault v. Walker* sets out most of the rules for deciding preliminary motions to dismiss, it does not perfectly fit this case. In cases where the parties have invoked their constitutional right to trial by jury, a trial court may not, on its own, make factual findings regarding the merits of the underlying claim. Tenn. R. Civ. P. 39.01. Still, a trial court must decide certain factual disputes involving merely incidental motions in such cases. By incidental motions, we mean motions that do not reach a case's merits. Preliminary motions to dismiss, other than Tenn. R. Civ. P. 12.02(6) motions, do not involve the merits of the underlying claim.[6] Parties losing these motions ordinarily may remedy the defect causing the dismissal of their suit and, as the poet said, "live to fight another day." Accordingly, it is well-settled that preliminary motions, including motions to dismiss for want of jurisdiction, and the facts underlying such motions, may be decided by the court alone. *Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 537-38, 115 S. Ct. 1043, 1050 (1995); *Cameron v. Children's Hosp. Med. Ctr.*, 131 F.3d 1167, 1170 (6th Cir. 1997); *Stewart v. RCA Corp.*, 790 F.2d 624, 628 (7th Cir. 1986).[7]

On the specific facts of *Chenault v. Walker*, the Tennessee Supreme Court declined to settle definitively on the plaintiff's factual version of the defendant's conduct at the motion to dismiss stage. Had the court done so, it would have simultaneously adjudged facts that also went to the merits of the plaintiff's underlying claim that the defendant had engaged in conspiracy. For this reason, the court concluded that "[W]e do not make any finding as to whether [the plaintiff's] version of events is, in fact, correct. That will be for a jury to decide . . .." *Chenault v. Walker*, 36 S.W.3d at 56. Mr. Wilson's case before us is different.

In this case, the only fact put at issue by the State's motion to dismiss is merely whether Mr. Wilson requested a declaratory order from the Department prior to January 1998. Whether or not Mr. Wilson requested this order is in no way entwined with the factual issues underlying the merits of his claim that he has not received sentence credits for the work he performed while incarcerated in the Davidson County Criminal Justice Center. To borrow *Chenault v. Walker*'s language, the

---

[6] Deciding the question of subject matter jurisdiction, for example, is not an adjudication on the merits. *Klein & Vibber, P.C. v. Collard & Roe, P.C.*, 3 F. Supp. 2d 167, 169 (D. Conn. 1998).

[7] By statute, the practice in Tennessee formerly was different. A party could demand a jury trial of disputed facts put at issue by a replication to a plea in abatement. *See* Sam B. Gilreath, *Caruthers' History of a Lawsuit* § 188 (7th ed. 1951) (discussing resolution of disputes of fact underlying pleas in abatement). This statutory procedure was replaced by the Tennessee Rules of Civil Procedure.

issue of whether Mr. Wilson sought a declaratory order from the Department before filing suit would not "be for a jury to decide if the case goes to trial." That particular fact would have no relevance to this suit's merits. Therefore, nothing prevents the court from making factual findings at the motion to dismiss stage.

More importantly, unlike *Chenault v. Walker*, this is a non-jury case. Ultimately the trial court will be required to decide all this case's disputed facts. Tenn. R. Civ. P. 39.02; *Warner v. Maroney*, 16 Tenn. App. 78, 90, 66 S.W.2d 244, 249 (1932) (stating that issues not submitted to a jury are to be tried by the trial court). That being true, nothing prevented the chancery court at the preliminary motion stage from making the factual finding it implicitly made in this case. The only question left is whether the trial court employed an allowable fact-finding method when it decided the facts underlying the Department's motion to dismiss.

**B.**

Trial courts may employ several procedures when called upon to resolve factual disputes arising in the context of a preliminary motion challenging their jurisdiction. They may decide the relevant jurisdictional facts "upon a full trial record, after an evidentiary hearing, or merely on the basis of a written record." *Berrios v. Department of Army*, 884 F.2d 28, 33 (1st Cir. 1989); *S & S Screw Mach. Co. v. Cosa Corp.*, 647 F. Supp. 600, 605 (M.D. Tenn. 1986). Thus, they may, in their discretion, grant a preliminary hearing to take evidence on a motion to dismiss. Tenn. R. Civ. P. 12.04, 43.02; *Chenault v. Walker*, 36 S.W.3d at 56 n.3. They may also decline to hold a hearing, as long as both parties have been given an opportunity to present their materials to the court. *Green v. WCI Holdings Corp.*, 136 F.3d 313, 315-16 (2nd Cir. 1998); *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 947 F.2d 529, 534 (1st Cir. 1991); *Health Care Review, Inc. v. Shalala*, 926 F. Supp. 274, 280 (D.R.I. 1996); *Nice-Petersen v. Nice-Petersen*, 310 N.W.2d 471, 472 (Minn. 1981). This is nothing more than a specific application of the general rule that courts may decide motions based on written materials. *See United States v. Valona*, 834 F.2d 1334, 1340 (7th Cir. 1987); *Conway v. Royalite Plastics, Ltd.*, 12 S.W.3d 314, 318 (Mo. 2000).

In deciding jurisdictional facts, trial courts may consider the pleadings and affidavits or other evidence purporting to show the material facts. *Schramm v. Oakes*, 352 F.2d 143, 149 (10th Cir. 1965); *Sterling T.V. Presentations, Inc. v. Shintron, Inc.*, 454 F. Supp. 183, 186 (S.D.N.Y. 1978); *Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286-87 (Ind. 1994); *Gabler v. McColl*, 863 S.W.2d 340, 342 (Mo. Ct. App. 1993). They may also weigh written evidence, *Cameron v. Children's Hosp. Med. Ctr.*, 131 F.3d at 1170; *Davis v. Central Rent-A-Crane, Inc.*, 663 N.E.2d 1177, 1179 (Ind. Ct. App. 1996), including evidence presented by affidavit. *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 1171-72 (7th Cir. 1997); *Carolina Power & Light v. Uranex*, 451 F. Supp. 1044, 1055 (N.D. Cal. 1977); *In re Marriage of Brown*, 884 S.W.2d 371, 374 (Mo. Ct. App. 1994); *In re Rea*, 584 N.E.2d 1350, 1355-56 (Ohio Ct. Cl. 1989).

As part of weighing the evidence regarding jurisdictional facts, trial courts in non-jury cases may "make a determination that in many cases will entail believing one party over another." *Sutherland v. Brennan*, 883 P.2d 1318, 1323 (Or. Ct. App. 1994), *aff'd on other grounds*, 901 P.2d

240 (Or. 1995); *Bonelli v. Chandler*, 331 P.2d 705, 709 (Cal. Dist. Ct. App. 1958). Therefore, when the affidavits pertinent to jurisdictional facts contradict each other, the court has the power to choose to rely on one affidavit over the other. *See Tanzola v. DeRita*, 285 P.2d 897, 901 (Cal. 1955); *O'Brien v. City of Santa Monica*, 33 Cal. Rptr. 770, 773 (Dist. Ct. App. 1963).

The trial court followed a permissible procedure for deciding the Department's Tenn. R. Civ. P. 12.02(1) motion. This was a non-jury proceeding, and the trial court exercised its discretion to resolve the factual disputes surrounding the Department's jurisdictional defense based on the written evidentiary materials submitted by the parties. The parties were provided a full and fair opportunity to submit these materials to the trial court. Accordingly, we have concluded that the trial court did not err by undertaking to decide the Department's Tenn. R. Civ. P. 12.02(1) motion without conducting an evidentiary hearing.

## III.

Our conclusion that the trial court did not err by deciding the Department's motion based on the record does not end the matter. We must still review the decision itself to determine whether it is the correct one. The trial court implicitly concluded that, as a matter of fact, Mr. Wilson did not seek a declaratory order from the Department before filing his chancery lawsuit. We review that finding de novo by examining the trial court record and by presuming that the finding is correct unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *Anderson v. City of Chattanooga*, 978 S.W.2d 105, 107 (Tenn. Ct. App. 1998); *Leek v. Powell*, 884 S.W.2d 118, 120 (Tenn. Ct. App. 1994) (reviewing an implicit factual finding under Tenn. R. App. P. 13(d)'s standard).

Mr. Wilson bore the burden of proving that he had brought his case within the trial court's subject matter jurisdiction. *Chenault v. Walker*, 36 S.W.3d at 56; *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d at 891; *Ensign-Bickford Co. v. ICI Explosives USA, Inc.*, 817 F. Supp. at 1024; *Vacca v. Meetze*, 499 F. Supp. 1089, 1090 (S.D. Ga. 1980). He attempted to carry his burden by filing two affidavits and an exhibit. In his own affidavit, he asserted that he had sent a request for a declaratory order to the Department on two occasions in the fall of 1994. In a supporting affidavit, his inmate counselor asserted that he had assisted Mr. Wilson with these requests. In addition to these affidavits, the Mr. Wilson submitted what appears to be an original form dated September 6, 1994 requesting a declaratory order.[8] To counter this evidence, the Department submitted Mr. Lutche's affidavit stating unequivocally that he had searched the Department's records and that the Department had never received a request for declaratory order from Mr. Wilson regarding the prisoner sentence credits he allegedly earned while incarcerated in the Davidson County Criminal Justice Center.

---

[8]The blank spaces on the form have been filled in using two different typewriters. The form also bears the word "copy" in original blue ink, indicating that it is a copy, and it contains an original signature.

Twenty years ago, Judge Nearn wrote that "[t]o weigh evidence is a task of fact." *Hohenberg Bros. Co. v. Missouri Pacific R.R. Co.*, 586 S.W.2d 117, 120 (Tenn. Ct. App. 1979). In our system of government, that task falls principally on the trial courts. As we have recently said:

> The trial judge's major role is the determination of fact, and with experience in fulfilling that role comes expertise. Duplication of the trial judge's efforts in the court of appeals would very likely contribute only negligibly to the accuracy of fact determination at a huge cost in diversion of judicial resources. In addition, the parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much.

*Mitchell v. Archibald*, 971 S.W.2d 25, 29 (Tenn. Ct. App. 1998) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 574-75, 105 S. Ct. 1504, 1512, 84 L. Ed. 2d 518 (1985)).

As we view the record in this case, the trial court must have decided to believe the Department and to disbelieve Mr. Wilson. For this court to hold that the evidence preponderates against the trial court's factual determination, we would be required to conclude that "the greater weight of the evidence as it pertains to the determinative issue"[9] favors Mr. Wilson's account rather than the Department's. We cannot do that based merely on the fact that Mr. Wilson submitted one more affidavit than did the State. Nor must we conclude that Mr. Wilson's exhibit was the clincher. The trial court appears to have examined Mr. Wilson's proffered "copy" of a declaratory order request form with an eye toward the traditional earmarks of documents as evidence[10] and to have determined that it lacked indicia of authenticity. Thus, the trial court could very well have concluded that the document had been manufactured to support Mr. Wilson's effort to avoid dismissal of his lawsuit. We have carefully examined the evidentiary materials submitted by the parties, and we cannot say that the evidence preponderates against the trial court's implicit finding that Mr. Wilson did not petition the Department for a declaratory order regarding his sentence reduction credits before seeking a declaratory judgment from the chancery court.

## IV.

We affirm the dismissal of Mr. Wilson's complaint on the ground that the trial court lacked subject matter jurisdiction because Mr. Wilson had failed to exhaust his administrative remedies. In addition, we remand the case to the trial court for whatever further proceedings consistent with this opinion may be required. Nothing in this opinion should be construed to prevent Mr. Wilson

---

[9] *In re Estate of Tittle*, 485 S.W.2d 255, 260 (Tenn. Ct. App. 1972) (discussing what it means for evidence to "preponderate" one way or the other).

[10] These earmarks include: (1) the genuineness of the signature, (2) the genuineness of the typewriting, (3) whether the document contains changes or alterations, (4) whether it appears to have been composed by the signer, and (5) whether it seems too recent to be genuine. Albert S. Osborn, *Questioned Documents* 241 (2d ed. 1929).

from filing a proper request for a declaratory order regarding the calculation of his sentence credits or from seeking judicial review of the Department's response to his request for a declaratory order. We also tax the costs of this appeal to Woodrow Wilson for which execution, if necessary, may issue.

_____

WILLIAM C. KOCH, JR., JUDGE